**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| MARTHA W. CALLAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. 2:08-CV-119-TFM** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, Martha Callahan ("Callahan") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

**I. STANDARD OF REVIEW**

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the

correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Callahan, age 48 at the time of the hearing, completed tenth grade and was assigned to special education classes. Callahan's past work experience includes employment as a

cook in the public school and juvenile corrections systems for approximately 19 years.[1] She has not engaged in substantial gainful work activity since the alleged onset date of September 7, 2004. Callahan claims she is unable to work because of diabetes and depression. The ALJ found Callahan was severely impaired by type II diabetes mellitus with neuropathy and depressive disorder, not otherwise specified, but that she did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] The ALJ found Callahan's testimony of disabling pain and functional restrictions disproportionate to the objective medical evidence, and stated the physical findings in the record did not support her allegations of intense or frequent pain, as the record did not establish the existence of neurological deficits, significant weight loss, muscle atrophy associated with Callahan's allegations.[3] The ALJ's decision also highlighted discrepancies between the medical record and Callahan's testimony, thus undercutting her credibility.[4]

Callahan's medical history shows her diabetes is controlled when she is compliant with her prescribed regimen.[5] While a patient at the Montgomery Area Mental Health Authority (MAMH) from December, 2005 through April, 2006, Callahan was diagnosed with

---

[1] R. at 304-06.

[2] R. at 29.

[3] R. at 35.

[4] R. at 34.

[5] R. at 189, 269.

major depressive disorder and participated in individual therapy sessions.[6]  MAMH terminated Callahan on July 28, 2006 after she lost contact with the organization for ninety days.[7]  The ALJ decision specifically addressed references in the record to Callahan's history of non-compliance and inability to pay for prescribed medications.  The ALJ noted she was referred by her treating physician to a local clinic which provides medication gratis or at reduced cost, and Callahan did not avail herself of those services.[8]

The ALJ evaluated Callahan's residual functional capacity (RFC) to determine whether she could return to her past work.  After reviewing the medical evidence as well as Callahan's testimony and statements during medical examinations, the ALJ found her diabetic neuropathy physically limited her to a range of light work activity.[9]  Callahan's mental RFC was mildly limited in the areas of ability to respond appropriately to supervisors, co-workers, and the general public; use of judgment in simple one or two-step work related decisions; ability to deal with changes in a routine work setting, understanding, remembering, and carrying out simple instructions; and social functioning.  The ALJ also found Callahan moderately limited in her ability to use judgment in detailed or complex work-related decisions; understanding, remembering, and carrying out detailed or complex instructions; and maintaining attention, concentration or pace for periods of at least two hours.  The ALJ

---

[6] R. at 28-29, 273-85.

[7] R. at 28-29, 272.

[8] R. at 35.

[9] R. 30-34; 35-36.

concluded these mental limitations were consistent with Callahan's physical RFC for a range of light work.[10]

A vocational expert (VE) was present during Callahan's administrative hearing and testified that a person capable of performing a range of light work could not perform Callahan's past work.[11] Under continued questioning by the ALJ, the VE opined such a person could work as an assembler, machine packer, checker, or grater.[12] The ALJ adopted the VE's testimony to conclude Callahan's residual RFC and ability to perform these listed occupations meant that she was not disabled under the Act.

### III. ISSUES

Callahan raises two issues for judicial review:

1. Whether the ALJ failed to properly consider Callahan's complaints of pain and neuropathy under the Eleventh Circuit pain standard.

2. Whether the ALJ failed to properly develop the record as to Callahan's level of mental functioning.

### IV. DISCUSSION

**1.** **<u>The ALJ Correctly Applied the Eleventh Circuit pain standard.</u>**

Callahan argues the ALJ erred in evaluating her pain and the record evidence of

---

[10]R. at 36.

[11]R. at 36, 336.

[12]R. at 37, 336.

medical conditions consistent with her claims. The Commissioner responds that the ALJ properly evaluated the credibility of Callahan's subjective complaints and objective medical evidence. The court agrees that the ALJ gave well-reasoned grounds to reject Callahan's allegations and testimony of disabling pain, and therefore, did not err in his application of the pain standard.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The Eleventh Circuit has set forth criteria for establishing a disability based on testimony of pain and other symptoms. It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). A "claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective

symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

Callahan contends the ALJ's RFC finding was inconsistent with her history of neuropathy and her testimony, and further contends an RFC finding consistent with the record would qualify her for disability. In August, 2004, Callahan's treating physician, Dr. Mary Casals, diagnosed type II diabetes mellitus, including mild symptoms of polyneuropathy.[13] Dr. Casals found Callahan responded well to treatment.[14] In June, 2006, Dr. Casals reported "good control" of Callahan's diabetes with minimally symptomatic neuropathy.[15]

During a consultative examination by Dr. Philip Golomb, Callahan reported experiencing pain while digging her yard to prepare a vegetable garden, admitted she was not taking her medications as directed, and stated that she left her employment as a cook to care for her mother.[16] Callahan's reported activities were working in her vegetable garden,

---

[13]R. at 24, 189.

[14]R. at 24, 189.

[15]R. at 269.

[16]R. at 25, 248-49.

7

attending church, going to movies, and going shopping.[17]  Dr. Golomb noted Callahan showed no discomfort while seated for approximately ninety minutes in the same position, and "jumped up quickly from sitting and moved about with considerable agility."[18]  Her physical exam demonstrated "a brisk, vigorous, coordinated gait," and an ability to walk on heels and toes and arise with ease from a full squat.[19]  Dr. Golomb completed a physical capacities evaluation which concluded Callahan could sit for three and one-half hours at one time, up to seven and one-half hours in an eight-hour day; stand for two to two and one-half hours at one time, up to six and one-half hours in an eight-hour day.[20]  Dr. Golomb's other findings related to Callahan's physical capacity for lifting and use of hands/feet all indicated she was able to perform work-related activities with some non-exertional limitations.[21]

The ALJ found Dr. Golomb's opinion regarding Callahan's functional abilities consistent with the record as a whole and gave it substantial weight in his RFC determination.[22]  Having noted that no medical expert concluded Callahan's impairments met or equaled a listed impairment, the ALJ also provided reasons for his decision to discredit

---

[17]R. at 25, 249.

[18]R. at 25, 249-50.

[19]R. at 26, 250.

[20]R. at 26, 252.

[21]R. at 26, 252-53.

[22]R. at 34.

Callahan's testimony.[23]  The ALJ contrasted Callahan's statement to Dr. Golomb that she stopped working to care for her mother with her testimony that problems with her legs and feet prevent her from working.[24]  Callahan also told the ALJ she dis not do any yard or garden work, but gave a different report to Dr. Golomb.[25]  Reports by Dr. Casals indicate Callahan achieved good results when compliant with her medical regimen, thus limiting the effects of her mild neuropathy.  Further, the ALJ noted Callahan had not pursued options for obtaining subsidized medications.[26] The Court agrees.  Although Callahan demonstrated the underlying medical conditions required under *Wilson*,  inconsistent medical reports and testimony  provide specific reasons for discrediting her subjective testimony.  *Wilson*, *id.;  see also Foote*, 67 F.3d at 1562 (a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed ).

The ALJ gave well founded, explicit reasons to reject Callahan's subjective testimony about pain and disability.  The given reasons satisfy the requirements in the Eleventh Circuit, and the ALJ cited substantial evidence for his decision on this issue.  The record shows that Callahan's subjective complaints of pain and disability did not support a finding that she was unable to perform the range of light work set forth by the ALJ and occupations identified by the VE.  Thus, she  failed to meet his burden of proof, and the court finds no reversible error

---

[23]R. at 29, 34.

[24]R. at 34; 249, 307.

[25]R. at 31, 315, 249.

[26]R. at 31, 35.

on this issue.

**2. The ALJ did not err in his review of Callahan's level of mental functioning.**

Callahan argues the ALJ failed to properly develop the record with regard to her mental impairments, and a psychological evaluation with IQ testing should have been ordered and considered prior to the issuance of a decision in her case. The Commissioner responds there was no indication that additional information was necessary to establish Callahan's mental ability, and the ALJ did not abuse his discretion when he chose not to supplement the record.

The ALJ has a basic obligation to develop the record fully and fairly, although the claimant has the burden of proving that he is a under a disability and the responsibility of producing evidence in support. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Callahan cites both her history of special education and diagnosed depression as grounds for error in her mental RFC. The ALJ considered and set forth an inclusive list of Callahan's limitations attributable to her intellectual functioning in his decision, and found them consistent with a range of light work.[27] And, though Callahan does not explicitly argue for consideration under the listing for retardation, the Court finds the ALJ was entitled to consider a claimant's activities and work history when that claimant argues disability due to lower-range intellectual functioning. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir.

---

[27]R. at 36.

1992) (considering work history where claimant asserts disability due based on low IQ score); *see also Whetstone v. Barnhart*, 263 F.Supp.2d 1318, 1325-26 (M.D. Ala. 2003) (reviewing work history and ability to hold a job where retardation is asserted as grounds for disability).  Here, Callahan's work record shows steady employment in institutional kitchens from 1986 through her decision to leave work to care for her mother.[28]  The conclusion that Callahan can perform the occupations listed by the VE stands on even firmer ground when one considers that, whatever limitations her mental functioning may impose, they were no impediment to her previous employment.  Her work history sufficiently refutes a claim of disability due to low IQ under the caselaw of this circuit.

       The ALJ found Callahan was severely impaired by depression, but noted her failure to continue mental health treatment and the absence of medication for the same.[29]  A claimant's failure to seek treatment is a proper factor for the ALJ to consider.  *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984).  Again, inconsistencies between Callahan's testimony and notes in the record show her activities included church activities, yard work, movies, and shopping.[30]  The ALJ appropriately considered Callahan's range of activities in finding her depression diagnosis did not prevent her from performing a range of light work.

       The ALJ's determination regarding Callahan's mental limitations is supported by substantial evidence, and this court finds no error in the ALJ's decision on the record before

---

[28] R. at 304, 249.

[29] R. at 33.

[30] R. at 31, 249.

him.

    Done this 20th day of November, 2008.

                                               /s/ Terry F. Moorer
                                             TERRY F. MOORER
                                             UNITED STATES MAGISTRATE JUDGE